# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8066 | **DATE** | 12/11/2003 |
| **CASE TITLE** | Chassappi Rain vs. Chicago Board of Education | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, Defendant's Motion for Summary Judgment [Doc. #27] is granted in its entirety. All other pending motions are moot and terminated. This case is closed.

/s/ David H. Coar

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | DEC 15 2003 date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | 39 |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| jar(lc) | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 DEC 12 AM 3:35 Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHASSAPPI RAIN, | ) |
| | ) No. 02 C 8066 |
| Plaintiff, | ) |
| | ) HONORABLE DAVID H. COAR |
| v. | ) |
| | ) |
| CHICAGO BOARD OF EDUCATION, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

DOCKETED
DEC 1 5 2003

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant Chicago Board of Education's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth in this opinion, the Defendant's Motion is granted.

## I. FACTS

Plaintiff Chassappi Rain ("Plaintiff" or "Rain") is a former tenured teacher at Wadsworth School.[1] On Friday, July 14, 2000, Plaintiff attended a seminar at the University of Chicago. Several of his colleagues from Wadsworth school were also in attendance at the seminar. During the plenary session, Plaintiff was seated behind Wadsworth teachers, Sharon Townsend and Janelle Harper.

Plaintiff had a conversation with Sharon Townsend before the session began. The conversation began when Ms. Townsend asked Plaintiff, "How is your girlfriend?" Plaintiff

---

[1] All facts are drawn from the parties statements of undisputed facts submitted in accordance with Local Rule 56.1. The Court will note any material facts that remain in dispute in its discussion of the facts.

1

responded that he did not have a girlfriend at that time, but that he was looking for a girlfriend. Ms. Townsend then asked Plaintiff about two specific female teachers at Wadsworth, implying that they might be suitable girlfriends for him. Plaintiff told Ms. Townsend that he was not incrested. Townsend then asked, "Well, what about your boyfriends?"[2] Plaintiff Rain is a heterosexual male. He responded, "Don't play that shit with me." This ended the conversation. According to Plaintiff, at least four people whom he knows overheard the conversation: Janelle Harper, Pauline Norris, Erick Rice, and Booker Rice. (Pl. Answer Def. St. Undisp. Facts, at 6.) It is possible that two other people who were unknown to Plaintiff also overheard the conversation. (Def. St. Undisp. Facts, Ex. A, at 144, lines 3–8.)

Over the weekend, Plaintiff attempted to obtain Townsend's phone number to discuss this matter with her. Plaintiff wanted to "tell her [he] didn't appreciate the slander that she had committed against [him] in so many words." (Def. St. Undisp. Facts, Ex. A at 145, lines 2–3) When Plaintiff could not obtain Townsend's phone number, he drafted a letter to express his dissatisfaction with Townsend's innuendo that he might have boyfriends and/or be gay. The three-page single-spaced typed letter is captioned an "Open letter to anyone within ear shot of Sharon Townsend, The AKA wannabe who has been a wanna be for the past fifty some years." (Def. Ans., Ex. B, at 1.)[3] Plaintiff was concerned that Townsend's innuendo would start a rumor

---

[2]Plaintiff notes that in Ms. Townsend's testimony at the disciplinary hearing, she admitted to asking "Well, are you gay?" and not the question he testified she asked ("Well, what about your boyfriends, then?"). The difference in their factual accounts is not material to this dispute, but the Court accepts Plaintiff's version for the purposes of this motion.

[3]Plaintiff's letter is attached to Defendant's Answer and Affirmative Defenses as Exhibit B. The letter is bate-stamped 000065–000067 in the lower right corner, but it also contains Plaintiff's original page numbering in the upper left header (Page 1 of 3, etc.). The Court will cite to the Exhibit, but with Plaintiff's original page numbers.

that would "become[] solidified as fact." (Def. St. Undisp. Facts, Ex. A at 145, lines 7–8; 145–46.)

After the weekend, Plaintiff attended the seminar at the University of Chicago and gave a copy of the letter to the following three people: Delores McConnell, Booker Rice, and Pauline Norris.[4] The parties dispute the characterization of the letter. Defendant describes the letter as being "filled with graphic sexual insults, religious and racial epithets and threats with references to blood being shed." (Def. St. Undisp. Facts, at ¶7.) Plaintiff "strongly disagrees with and disputes Defendant Board's interpretation of the letter." (Pl. Answer Def. St. Undisp. Facts, at 7) The Court finds that the Defendant accurately characterized the letter. The letter contains: graphic sexual references that praise Plaintiff's sexual feats with women and degrade Ms. Townsend's relationship with her husband (Def. Ans. Ex. B, at 1–2)[5]; racial epithets directed at Ms. Townsend (Def. Ans. Ex. B, at 2);[6] remarks that are degrading to religion (Def. Ans. Ex. B, at 1–2)[7]; and threats against Ms. Townsend (Def. Ans. Ex. B, at 2)[8].

It did not take long for Ms. Townsend to find out about the letter. Although the record is

---

[4] Plaintiff disputes whether the letter was distributed on Monday, July 17, 2000 or Tuesday, July 18, 2000. The dispute is not material to the outcome of this case.

[5] Plaintiff does not dispute this characterization.

[6] Plaintiff disputes whether he was using the word "nigger" as a racial epithet. On page two of the letter, Plaintiff writes, "I don't know your 'husband' but in the vernacular of a nigger like you, I ain't scared of him." (Def. Ans. Ex. B, at 2) This is plainly a racial epithet.

[7] Plaintiff does not dispute this characterization.

[8] Plaintiff characterizes the lettter as a "warning" rather than a threat. The following is clearly a threat: "if blood, including my own, ever starts flowing, WE decide when it stops." (Def. Ans. Ex. B, at 2)

3

unclear about when or how she learned of the letter, both parties are in agreement that she learned of the letter within the week it was distributed. Ms. Townsend brought the letter to the attention of Milton Albritton, the principal of Wadsworth School. Albritton shared the letter with Defendant Board's Director of Labor Relations.

The Board brought dismissal charges against the Plaintiff and a hearing was held on July 23, 2001. Plaintiff was represented by counsel at this hearing. At the conclusion of the hearing, the hearing officer determined that the letter threatened Townsend and attacked the other female teachers at Wadsworth. (Def. Ans., Ex. A at 15) The hearing officer also determined that the letter's tone and contents were "vicious, sexist, [and] racist." (Id.) The hearing officer further determined that the Plaintiff "lack[ed] any awareness of the degree of its inappropriateness." (Id.) The hearing officer then concluded that "real damage has been caused to the ability of Mr. Rain to work effectively with other teachers at Wadsworth. . . . This was not remediable conduct and I recommend discharge." (Id.) Defendant Board accepted that recommendation and Plaintiff was subsequently discharged.

Plaintiff then filed a Charge of Discrimination with the EEOC on August 1, 2002. The EEOC issued a right-to-sue letter, which Plaintiff alleges he received on August 18, 2002. Plaintiff filed his Complaint in this case on November 7, 2002. Defendant has now moved for Summary Judgment.

## II. DISCUSSION

### A. Legal Standard

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should only be granted if the evidence presented to the court in support of the motion

4

demonstrates that there are no genuine issues of material fact to submit to a jury and the moving party is entitled to prevail as a matter of law. See Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706, 709 (7th Cir. 2002). To defeat the motion, the non-moving party must come forth with sufficient evidence to demonstrate the existence of a genuine issue of material fact on each of the material elements of the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("a complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial"). Where there is competing proof, the Court makes all reasonable inferences in favor of the non-moving party.

### B.  Plaintiff's Gender Discrimination Claim

Plaintiff's Complaint alleges that Defendant Board terminated him because of his gender in violation of Title VII, which makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .sex . . . ." 42 U.S.C. § 2000e-2(a)(1). "A Title VII plaintiff can satisfy [the] burden of proof by two avenues: (1) [the plaintiff] may present direct evidence of discriminatory intent or, because of the difficulty in directly proving discrimination, (2) [the plaintiff] may use the indirect, burden-shifting procedure set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1031 (7th Cir. 1998); see also Hildebrandt v. Illinois Dep't Nat. Resources, 347 F.3d 1014 (7th Cir. 2003) (quoting Gonzalez).

Plaintiff Rain offers no direct evidence of discriminatory intent, so he must proceed under the burden-shifting approach. Under this approach, the plaintiff must establish a prima facie case of gender discrimination by a preponderance of the evidence. If the plaintiff meets that burden,

5

then the burden of proof shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the challenged employment action. If the defendant is able to produce a legitimate non-discriminatory reason, then the burden shifts back to the plaintiff to present sufficient evidence that would permit the jury to determine that the proffered reason was pretextual.

In order to make out his prima facie case of gender discrimination, the plaintiff must present evidence that: (1) he is a member of a protected class under the statute; (2) he was meeting his employer's legitimate work expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of the protected class. See Hildebrandt v. Illinois Dep't Nat. Resources, 347 F.3d 1014, 1030 (7th Cir. 2003) (quoting Markel v. Bd. of Regents of the Univ. of Wisconsin Sys., 276 F.3d 906, 911 (7th Cir.2002)).

Plaintiff Rain has failed to make out the prima facie case. He can show that he is a member of a protected class (male) and that he suffered an adverse employment action (his termination), but he has failed to demonstrate both of the other elements. With regard to the employer's legitimate expectations, drafting and disseminating the letter defied the legitimate expectations of Defendant Board. As Defendant represented to the hearing officer at Plaintiff's disciplinary hearing, "No teacher needs to be told not to refer to a co-worker in the disgusting, degrading ways that Rain referred to Townsend in his letter." (Def. Ans., Ex. A at 15) This conduct was in violation of both the written code of conduct and any measure of common sense.

Furthermore, Plaintiff's efforts to identify a similarly-situated female teacher are unavailing. Plaintiff asserts that Ms. Townsend ought have been disciplined for the remark she

6

made that started this whole firestorm. While Plaintiff may be correct that her comment would be grounds for discipline, her conduct was not sufficiently similar to Plaintiff's such that she is similarly situated. Her remark, however lamentable, did not approach the grievous misconduct Plaintiff engaged in when he distributed his letter. Ms. Townsend's question to Plaintiff was inappropriate, but it was an isolated remark that was almost genteel relative to Plaintiff's letter. No reasonable jury could conclude that Plaintiff and Ms. Townsend were similarly situated vis-a-vis the Defendant Board.

Plaintiff cites to other incidents at the school where he alleges that his co-workers harassed him at school. (Pl. Am. St. Add'l Facts Denial Summ. J., Ex. P23, at 10) He asserts that one of his co-workers "taunted him about being a queen"; "another coworker attempted to humiliate [him] by questioning him about his manhood and asking him whether he masturbated", and female coworkers "brush[ed] up against him with their breasts in attempts to embarrass him." (Id.) This alleged harassment did not result in punishment, despite Plaintiff's complaints to the principal of the school. As with Ms. Townsend's remark, none of the alleged misconduct is as reprehensible as Plaintiff's letter. In reaching this conclusion, the Court is not approving of the alleged behavior of Plaintiff's co-workers, it is simply asserting that their misconduct was of a lesser degree than Plaintiff's. Plaintiff wrote and distributed a letter describing his sexual prowess, demeaning one of his coworkers in graphic sexual detail, containing racial epithets, and degrading women and religion in equal measure. None of the alleged misconduct by Plaintiff's co-workers is of the same order.

Finally, even if Plaintiff had made out his prima facie case (which he did not), the Defendant Board had exceedingly legitimate non-discriminatory reasons for terminating him, to

7

wit, the letter. The burden would shift back to Plaintiff to prove that these reasons were a pretext for gender discrimination. In an attempt to meet that burden, Plaintiff has suggested that there were infirmities in the hearing process that led to his termination. None of the alleged infirmities in the hearing process cast any doubt on Defendant's legitimate non-discriminatory reason for his termination.

All the evidence in this case suggests that Defendant terminated Plaintiff's employment as a direct response to his decision to write and distribute the letter. No reasonable jury could conclude otherwise.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted in its entirety.

Enter:

_____

**David H. Coar**
**United States District Judge**

**Dated: December 11, 2003**